**IN THE UNITED STATES DISTRICT COURT FOR THE**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 1:21CR50-RDA |
| v. | ) | |
| | ) | |
| EVER MATAMOROS MARTINEZ | ) | |
| Defendants. | ) | |

## DEFENDANT'S POSITION ON SENTENCING

Ever Matamoros Martinez, through counsel, hereby respectfully submits his Position on Sentencing. For reasons that will be addressed in the following memorandum, this Court should impose a sentence of 15 months, in accordance with 18 U.S.C. § 3553's policy of a "sufficient, but no greater than necessary" sentence.

## INTRODUCTION

Mr. Martinez participated in the drug conspiracy not to get rich, and not to develop his own customer base. Instead, he acted as a middle-man between the person from whom he purchased drugs for personal use, and his friend—Flores-Carduno. Mr. Martinez's actions were motivated by his own drug use, which was at an all-time high at the time of this offense.

Mr. Martinez recognizes that the foregoing facts do not excuse his actions. He has shown that his remorse is sincere by promptly pleading guilty and accepting responsibility for his conduct. For the reasons that follow, we respectfully submit that a sentence of 15 months—the low end of the applicable guidelines range—is sufficient, but not greater than necessary to meet all of the goals of sentencing in this case.

**DISCUSSION**

**I.      APPLICABLE LAW.**

Federal sentencing is governed by 18 U.S.C. § 3553(a). Section 3553(a) requires the sentencing Court to consider the following factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from future crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the Guidelines; (5) Guidelines Policy Statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution. In considering these factors, section 3553(a) directs the sentencing court to "impose a sentence *sufficient but not greater than necessary*" to comply with the purposes of sentencing as set forth in the Sentencing Reform Act (emphasis added).

It is well settled that the Federal Sentencing Guidelines are purely advisory, and that a district court may not presume a sentence within the Guidelines to be reasonable. *Gall v. United States*, 552 U.S. 38, 50 (2007). The court must calculate the applicable Guidelines, but it may not rely solely on the Guidelines range for determining the sentence to be imposed. *United States v. Pauley*, 511 F.3d 468, 473 (4th Cir. 2007) (citing *Gall*, 128 S. Ct. at 596-97). Instead, all section 3553 must be considered by the Court.

The applicable law for individual sentencing factors will be discussed in greater detail in the individual sections below.

## II.    THE SENTENCING GUIDELINES.

### a.  The Sentencing Guidelines Calculation in the PSR.

The PSR writer calculates Guidelines as follows: Pursuant to USSG § 2D1.1(a)(5), the base offense level is 20.  PSR ¶ 37.  Under USSG § 3E1.1(a) and (b), Mr. Martinez's offense level is decreased by 3 levels for acceptance of responsibility.  PSR ¶¶ 44-45.  The resulting offense level is 17.  PSR ¶ 46.

The PSR writer agrees that under the First Step Act, Mr. Martinez is eligible for the "safety valve" reduction of two levels, in the form of a downward variance.[1]  PSR ¶ 87.  This reduction would result in an offense level of 15.

With a criminal history of II, the resulting advisory range is 21-27 months.  PSR ¶ 87.

However, for reasons we address in the section that follows, Mr. Martinez should receive a minor role adjustment, under USSG § 3B1.2(b).  The resulting advisory range with this adjustment is 15-21 months.

### b.  Mr. Martinez Should Receive a Two-Point Downward Adjustment for Minor Role.

Mr. Martinez respectfully submits that he qualifies for a minor role adjustment under USS. § 3B1.2.  A minor participant is defined as someone who "is less culpable than most other participants, but whose role could not be described as minimal." *Id*. n.5; *United States v. Quinones*, 771 F. App'x 254, 255 (4th Cir. 2019).  For the reasons that follow, Mr. Martinez is the least culpable of the conspirators in this case, and the facts of this case support a 2-point reduction for his minor role.

*(1) 2015 amendments to the mitigating role guideline.*

---

[1]    This should be applied as a variance, because the Guidelines has not yet been amended to reflect the change First Step Act provisions.

Prior to discussing the facts, we respectfully note that the § 3B1.2 was amended in 2015 to make several clarifications, intended to permit more frequent application of the mitigating role adjustments. *See* USSG, *Amendments to the Sentencing Guidelines*, April 30, 2015, at 45-50.[2] First, the amendment clarified that the "substantially less culpable than the average participant" language refers to the average participant in a *given case,* not the universe of people committing similar crimes. Second, the amendment clarified that an individual held accountable only for his own offense conduct is not precluded from receiving a minor role adjustment for his relative culpability. Third, the amendment clarified that the defendant may still receive a minor role adjustment even if his participation was "essential" or "indispensable." Finally, the amendment provided a non-exhaustive list of factors supporting a minor role reduction, including: (1) the degree to which the defendant understood the scope and structure of the criminal activity; (2) the degree to which the defendant participated in planning or organizing the criminal activity; (3) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority; (4) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts; and (5) the degree to which the defendant stood to benefit from the criminal activity. Application Note 3(C); See also *United States v. Carbajal*, 717 F. App'x 234, 240 (4th Cir. 2018) (describing the 2015 amendment that, noting that "[t]he Commission announced Amendment 794 after conducting a survey and discovering that the "mitigating role is applied inconsistently and more sparingly than the

---

[2]     *Available at* http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf

Commission intended.") (citing U.S. Sentencing Guidelines Manual, app. C, amend. 794, at 117 (U.S. Sentencing Comm'n Supp. Nov. 1, 2015)).

*(2) Mr. Martinez's offense conduct.*

The factors enumerated in Note 3(C) overwhelmingly suggest that a minor role reduction is appropriate in this case because Mr. Martinez is less culpable than most of the other participants in the criminal activity.

Before addressing these factors, we briefly summarize the offense conduct. In this case, Mr. Martinez acted as a "middle-man" between Mr. Flores-Carduno, who bought ounce quantities of cocaine, and the source of the cocaine. Mr. Martinez simply knew the supplier because he personally had a cocaine addiction, and purchased small quantities of cocaine from this individual. Flores-Carduno asked Mr. Martinez to introduce him to the person he bought cocaine from, so that Flores-Carduno could purchase larger quantities for resale. Mr. Martinez obliged, and in exchange, he received personal use quantities of cocaine.

At the behest of Flores-Carduno, Mr. Martinez would contact the supplier, pick up the drugs, and deliver them to Flores-Carduno. Mr. Martinez did not receive money, nor a cut of the cocaine for redistribution.[3] Mr. Martinez personally did not sell any cocaine. For Mr. Martinez, the decision to be involved in these transactions was simple: it was a means to obtain person-use

---

[3]     The facts stated in PSR ¶ 33 are not fully accurate. Mr. Martinez was not in any sense a "supplier" to Flores-Carduno, as discussed. Mr. Martinez was paid in cocaine, not cash. While Flores-Carduno, in statements to law enforcement, suggested that Mr. Martinez was a supplier, this was not true. Moreover, Flores-Carduno's other actions in which Mr. Martinez had no involvement—including the distribution of firearms—show that he had involvement in criminal conduct beyond drug-dealing. Flores-Carduno's degree of guilt is further reflected by the fact that 90 grams of cocaine were recovered from his residence, while only 17 grams, a quantity consistent with personal use, were recovered from Mr. Martinez's residence.

quantities for himself and his girlfriend. In light of this factual context, we now address the Note 3(C) factors.

*Understanding of the scope and structure of the activity*. Mr. Martinez knew the supplier, and knew Flores-Carduno. He did not know where the supplier obtained his drugs, and he did not know who Flores-Carduno's customers were. His understanding of the scope and structure of the scheme was thus limited.

*Participation in planning and organizing the scheme*. Mr. Martinez was not an organizer or planner of the scheme. As noted, Mr. Martinez's role in the scheme was limited to obtaining and then delivering the drugs from the supplier to Flores-Carduno.

*The degree of decision-making authority*. Mr. Martinez had no decision-making authority in the scheme. Of course, he had the decision to participate or not participate in the offense, but this is true of every single criminal offense. Beyond this, Mr. Martinez acted purely as a means to get cocaine from one person to another, and he had no real decision-making authority in this limited role.

*The nature and extent of participation in the criminal activity*. The nature of Mr. Martinez's participation was very limited. As noted, he did not play any role the distribution of drugs or the acquisition of the larger quantities for the supplier. He simply took the drugs from point A to point B, in exchange for small quantities.

*The degree to which defendant stood to benefit from the criminal activity*. The parties who truly stood to gain from this conduct leveraged Mr. Martinez's addiction for their own benefit. Mr. Martinez was paid for his involvement in small quantities of drugs. Considering that the transactions between the supplier and Flores-Carduno involved thousands or tens of thousands of dollars, Mr. Martinez's "benefit" for his involvement was minimal.

For all of these reasons, Mr. Martinez should receive a 2-level downward adjustment, resulting in an offense level of 13, with a corresponding advisory range of 15-21 months.

III.    THE SECTION 3553(a) FACTORS SUPPORT A SENTENCE AT THE LOW END OF THE ADVISORY RANGE.

a.  Mr. Martinez's history and characteristics.

Mr. Martinez was born in La Joyada, Honduras, in 1981. Mr. Martinez went to school through sixth grade. At age 11, he went to work on a farm, and did not complete school. Although his parents remained married and Mr. Martinez grew up in an intact household, Mr. Martinez, his three siblings, and his mother faced challenges caused by his father's alcoholism.

In 2000, at the age of 19, Mr. Martinez came to the United States. Initially, it was Mr. Martinez's goal to get an education—an opportunity he did not have in Honduras, where he worked from an early age. Unfortunately, Mr. Martinez's father became ill, and Mr. Martinez went to work in a variety of physical labor jobs, including carpet cleaning, landscaping, and construction and paving. Mr. Martinez has worked consistently since his arrival in the United States over 20 years ago.

In 2005, when he was 24 years old, Mr. Martinez met Ana Yancy-Carranza. Several years later, in 2013, they married. However, in 2018, the relationship ended after Mr. Martinez discovered that Ms. Carranza was having an extramarital affair. Although Mr. Martinez had previously had a habit of alcohol use sufficiently serious that it led to two arrests (PSR ¶¶ 50-51), this substance abuse escalated significantly after the collapse of Mr. Martinez's marriage.

Unfortunately, although Mr. Martinez began a new romantic relationship after this difficult period in his life, his partner was likewise struggling with substance abuse—specifically, alcohol and cocaine. Mr. Martinez's substance abuse thus grew gradually worse in the period leading up to the offense in this case. It was Mr. Martinez's growing dependence on cocaine, combined with

the high cost of the drug and Mr. Martinez's inability to purchase the drugs he increasingly needed, that motivated Mr. Martinez's involvement in the offense.

For purposes of section 3553(a), several factors from Mr. Martinez's background are significant. First, his history of hard work is a factor that supports a lower sentence. Second, his drug addiction and the role that this ultimately played in the offense has been recognized as a mitigating factor. *See, e.g.*, *United States v. Tomko*, 562 F.3d 558, 570-72 (3rd Cir. 2009). Closely related to this is Mr. Martinez's motive for participating in the offense, which was not to get rich or to develop his own illegal drug business, but to feed his day-to-day drug use (as well as that of his girlfriend). While certainly no excuse for the offense, motive has been held to be an important consideration in determining the severity of the appropriate sentence. *See, e.g., Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993) ("The defendant's motive for committing the offense is one important factor [in determining the sentence]"); *See also* 1 W. LeFave & A. Scott, Substantive Criminal Law § 3.6(b), p. 324 (1986) ("Motives are most relevant when the trial judge sets the defendant's sentence, and it is not uncommon for a defendant to receive a minimum sentence because he was acting with good motives, or a rather high sentence because of his bad motives").

For all of these reasons, Mr. Martinez's history warrants a sentence at the low end of the of the applicable sentencing guidelines range.

**b. Mr. Martinez's offense conduct.**

We have addressed the facts of the offense in detail at part II(b), *supra*. For all of the reasons stated therein, as well as Mr. Martinez's motive for participating in the conspiracy, a sentence at the low end of the of the applicable guidelines range is appropriate.

**c. The need for deterrence, to promote respect for the law, and to achieve just punishment.**

A sentencing at the low end of the guidelines range is sufficient, but not greater than necessary to promote the goals of deterrence, respect for the law, and just punishment, for the following reasons:

First, although he has incurred misdemeanor convictions directly related to his substance abuse, Mr. Martinez has never previously been sentenced to a term of incarceration. In this case, by contrast, Mr. Martinez has already been in custody for in custody for eight months. A sentence at the low end of the guidelines range is a significant deterrent for Mr. Martinez. Courts have recognized that individuals who have previously served only short periods of incarceration, or those who have served no sentence of incarceration at all, do not require lengthy sentences for purposes of deterrence. *See, e.g., United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming non-guideline sentence of 78 months from 108 months, justified in part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in § 3553(a)(2)(A) and "adequate deterrence" in § 3553(a)(2)(B)); *United States v. Hammond*, 240 F. Supp. 2d 872, 880 (E.D. Wis. 2003) ("the court can consider whether, in light of the length of the prior sentences the defendant received, the applicable criminal history category produces a sentence far in excess of what is required to achieve a deterrent effect"). For these reasons, a sentence of 15 months for Mr. Martinez is sufficient to achieve deterrence.

Second, the Court can and should consider the fact that Mr. Martinez has been in pretrial custody during the COVID-19 pandemic. COVID-19 has rendered pretrial confinement significantly more punitive than incarceration during normal times. *See, e.g., United States v. Mel*, Crim. No. TDC-18-0571, 2020 WL 2041674 (D. Md. Apr. 28, 2020) (recognizing that the

pandemic has "sufficiently increased the severity of the sentence beyond what was originally anticipated.").

Third, this Court can and should consider the severe consequences of Mr. Martinez's conviction, beyond incarceration. Here, that consequence is Mr. Martinez's deprotonation from the United States. Although undersigned counsel has not researched the immigration issue and furthermore lacks expertise to provide an opinion on immigration matters, the probation office has noted that Mr. Martinez faces deportation as a result of his conviction for the instant offense. PSR ¶ 84; *See also* 8 U.S.C. § 1227(a)(2) (providing for deportation on various grounds involving criminal convictions). Assuming this to be the case, one effect of this criminal conviction is that Mr. Martinez faces a substantial punishment not contemplated by the guidelines: deportation to Honduras. This is a severe consequence of his conviction that supports a sentence at the low end of the applicable guidelines range, both because it functions as an extra layer of punishment in addition to prison, and also because it reduces the need for specific deterrence. *See Padilla v. Kentucky*, 559 U.S. 356, 373 (2010) (deportation is a "particularly severe penalty" "equivalent [to] banishment or exile"); *United States v. Thavaraja*, 740 F.3d 253, (2d. Cir. 2014) (upholding variant sentence of 108 months where guidelines range was 240 months based, in part, on defendant's likelihood of deportation); *United States v. Smith*, 27 F.3d 649, 654 (D.C. Cir. 1994) (concluding that "downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence").[4]

---

[4]    Although some circuits have rejected the application of a downward departure for immigration consequences, *see United States* v. *Restrepo*, 999 F. 2d 640 (2d. Cir. 1993), the Fourth Circuit has not addressed the issue. In any event, it is clear that a district court may consider factors to support a variant sentence even where such factors may be inapplicable in a departure scenario.

Finally, while the sentencing guidelines provide for a generic reduction of three points for acceptance of responsibility, the guidelines fail to distinguish the various degrees of acceptance. The swiftness with which Mr. Martinez accepted responsibility for his offense reflects that he sincerely recognizes that his conduct was wrong. He has never sought to deny responsibility for his actions. The proper way to account for this is by imposing a sentence on the low end of the guidelines.

## CONCLUSION

For all of the foregoing reasons, this Court should impose a sentence of 15 months.

Respectfully Submitted,

By: /s/ Eugene Gorokhov
Eugene Gorokhov VSB # 73582
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173 (fax)
eugene@burnhamgorokhov.com

*Attorney for Defendant*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing motion via ECF which will provide notice and a copy to counsel for the government.

Respectfully Submitted,

By: /s/ Eugene Gorokhov
Eugene V. Gorokhov, VSB # 73582
*Attorney for Defendant*
BURNHAM & GOROKHOV, PLLC
1424 K Street NW, Suite 500
Washington, DC 20005
(202) 386-6920 (phone)
(202) 765-2173(fax)
eugene@burnhamgorokhov.com